08 CV 6477

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ERIK A. M. POELMAN, On Behalf of Himself            C.A. No.
and All Others Similarly Situated,

                              Plaintiff,            CLASS ACTION
                                                    COMPLAINT FOR
        vs.                                         VIOLATION OF THE
                                                    FEDERAL SECURITIES
                                                    LAWS
SEMGROUP ENERGY PARTNERS, L.P.,
SEMGROUP ENERGY PARTNERS G. P. LLC,                 JURY TRIAL DEMANDED
KEVIN L. FOXX, GREGORY C. WALLACE,
and ALEX STALLINGS,                                 ┌─────────────────────┐
                                                    │   U.S.D.C. S.D.N.Y.  │
                              Defendants.           │      CASHIERS        │
--------------------------------------------------------X └─────────────────────┘

        Plaintiff, individually and on behalf of all others similarly situated, by his attorneys,

alleges the following based on the investigation of his counsel, except as to allegations

specifically pertaining to plaintiff and his counsel, which are based on personal knowledge. The

investigation of counsel is predicated on, among other things, a review of public filings by

SemGroup Energy Partners, L.P. ("SGLP" or the "Company") with the United States Securities

and Exchange Commission ("SEC"), press releases issued by the Company, statements made by

Company executives during public telephone conferences, media reports about the Company,

and publicly available trading data relating to the price and volume of SGLP common units.

## SUMMARY OF THE ACTION AND FACTUAL BACKGROUND

        1.      This is a securities class action on behalf of all purchasers of the common units of

SGLP between February 20, 2008 and July 17, 2008 (the "Class Period") for violations of the

Securities Exchange Act of 1934 (the "Exchange Act").

        2.      SGLP a public limited partnership is run by its general partner SemGroup G.P.

LLC (the "General Partner") a wholly owned subsidiary of SemGroup L.P. (the "Parent"). The

Parent is a private company with significant operations in the oil business. In 2007 SGLP was partially spun off via a public offering, with the Parent retaining a 49% interest. A number of the directors and officers of the General Partner are officers of the Parent. As an entity in the oil business, the Parent was a party to a number of hedge transactions related to the price of crude oil. Hedging the price of crude oil has become a difficult endeavor, since the price is marked by large swings in value and high volatility. Betting wrong on which way prices are going can leave a hedging party in huge financial difficulty.

3.    In the last several years the price of crude oil has rocketed, with the potential for large dips:

a.    In the fall of 2007 oil prices rose to an all-time high of $80 per barrel;

b.    On October 19, 2007, U.S. light crude rose to a new high of $90.02 per barrel. Prices fell briefly then rose again rapidly to a peak of $92.22 on October 26, 2007;

c.    Prices increased throughout late October and early November. On November 7, 2007 light crude oil reached another record, closing at $98.10 per barrel. On November 21, 2007, oil prices rose to a new high of $99.29 per barrel;

d.    On January 2, 2008, U.S. light crude surpassed the psychological barrier of $100 before falling to $99.69;

e.    The price of oil once again rose to $100.10 a barrel on February 19, 2008. Oil prices rose above $101 a barrel February 27, 2008. Oil prices surpassed $103 a barrel February 29, 2008 ;

f.    Oil prices continued to rise to $104 on March 3, 2008. Oil hit $111 a barrel, on March 13, 2008, before sliding back to below $110. The record was again broken on March 17, 2008, with U.S. light sweet crude reaching $111.80. On April 15, 2008 the price of

2

oil broke the $114 mark for the first time. The price increased to $115.07/barrel on April 16, 2008, and increased again to $117 per barrel on April 18, 2008. Oil prices rose to a new high of $119.90 a barrel on April 22, 2008, before dipping and then rising $3 on April 25, 2008 to $119.10;

g.     On May 9, 2008, the oil price exceeded $125 per barrel for the first time;

h.     On June 28, crude hit a record of $142.99. Oil rose on July 1 to a record $143.67;

i.     On July 3 London Brent crude reached a record of $145.75 a barrel. On July 11, Oil hit another record of $US147.00 a barrel;

j.     On July 15, a selloff began resulting in an $8 drop. By the end of that week, crude oil had fallen by 11% to $128.

4.     During early 2008 the Parent was caught up in oil hedging transactions which were very risky. The Parent bet wrong on these hedges and began to suffer margin calls which it had trouble meeting, and had to cover transactions that had declined, and which began to severely impact its business and cause-liquidity problems. Rather than disclose its difficulties at the start of the Class Period, when SGLP made a large secondary offering of common stock which yielded approximately $137 million proceeds (the "Offering"), the defendants used the Offering as a vehicle to provide much needed cash to the Parent through the sale to SGLP of the Parent's liquid asphalt cement business. While the Parent was described in very positive terms in the Offering, in fact it was in financial trouble and/or was teetering on the brink of disaster if oil prices rose further, which was not revealed.    By discussing the positive benefits of the relationship between SGLP and the Parent at length in the Offering and in subsequent filings

3

with the SEC, defendants had an on-going affirmative duty to disclose ~~the~~ material negative information about the Parent to the investing public.

5.    SGLP provides terminalling, storage, gathering, and transportation services for companies engaged in the production, distribution, and marketing of crude oil. It owns and operates an aggregate of approximately 6.7 million barrels of storage capacity. These oil related assets were contributed to the Company by the Parent in connection with the Company's initial public offering in July 2007. The Company also owns and operates 46 liquid asphalt cement terminals, which provide liquid asphalt cement terminalling and storage services in the markets of continental United States. The Company is based in Tulsa, Oklahoma. SGLP is a subsidiary of the Parent.

6.    As noted above, on or about February 20, 2008 the Company effected the Offering, which involved the sale of 6 million common units at $23.90 per unit for proceeds of $137 million. The purpose of the Offering was to permit the Company to raise funds to acquire the Parent's asphalt business for $378.5 million. In addition to using the proceeds from the Offering, the Company revealed that it would borrow an additional $241 million to complete the acquisition. The Prospectus described the throughput agreement which had been previously entered into with respect to the Company's ownership and operation of the Parent's crude oil gathering business which had been conveyed to the Company in connection with the Company's initial public offering. Pursuant to the throughput agreement the Parent had obligated itself to make significant payments to the Company for services rendered by the Company to the Parent in gathering crude oil for delivery to refiners, pipelines or storage facilities. The throughput agreement is a very materially beneficial contract to the Company, and provides the Company with significant revenue. Anything which would put that agreement in jeopardy would be highly

4

material. In connection with the acquisition of the asphalt business, the Company entered into a terminalling agreement with the parent which was to provide substantial revenues to the Company in connection with the Company's operation of the asphalt business. Anything which would put that agreement in jeopardy would be highly material. In addition there was extensive discussion about the Company's interaction with the Parent and its effects on the Company's business and prospects. The Company is dependant on the Parent for labor, since the Company has few employees. The Prospectus disclosed that the Parent intended to use the proceeds received by it from the sale of the asphalt business to pay down its indebtedness. There was extensive discussion in the Prospectus concerning the Company's relationship with the Parent and the impact of that relationship on the Company's business. (February 13, 2008 Prospectus pp. 52-56; 69-80) At no time however did the Prospectus reveal that the Parent was suffering from liquidity problems, or that it was engaged highly risky crude oil hedge transactions which could affect its ability to continue as a going concern should oil prices further increase. Anything which was materially negative concerning the Parent would be material to the Company.

7.    Thereafter, on March 6, 2008, the Company filed its Annual Report on Form 10-K for the year ending December 31, 2007. While the report extolled the virtues of the relationship with the Parent, there was no revelation that the Parent was in serious financial trouble, or had invested in highly risky crude oil hedges which put the Company's future in serious jeopardy. Thus, Defendants did not correct the misstatements and omissions contained in the Prospectus with respect to the February Offering. The Report was signed by defendants, the General Partner, Foxx, Stallings and Wallace.

8.    On May 8, 2008, the Company filed its Quarterly Report on Form 10-Q for the quarter ending March 31, 2008. While the Report discussed the extensive business relationship

between the Company and the Parent, there was no revelation that the Parent was in serious

financial trouble, or had invested in highly risky hedges which put the Company's future in

serious jeopardy. Thus, Defendants did not correct the misstatements and omissions contained in

the Prospectus with respect to the February Offering. The Report was signed by Defendants, the

General Partner and Stallings.

   9.  In the period post the Offering, SGLP units traded in the $24-27 range reflecting

that, as far as the investing public was aware, the Company was operating according to its

business plan. However, by July 11, 2008, SGLP unit values began to decline on increased

trading volume, despite the release of no adverse news. Then on July 17, 2007 SGLP unit price

decline 50% to $11.00 on greatly increased volume of 5.7 million units, as a result of leakage of

the material adverse news which had been withheld by Defendants. As a result of the

widespread leakage, the defendants were finally forced to issue a statement which they did after

the market closed on July 17, 2008, and which stated in relevant part:

> TULSA, Okla.--(BUSINESS WIRE)--SemGroup Energy Partners, L.P. (NASDAQ: SGLP), has been informed by SemGroup, L.P., SGLP's parent, that SemGroup, L.P. is experiencing liquidity issues and is exploring various alternatives, including raising additional equity, debt capital or the filing of a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. Kevin Foxx, SemGroup Energy Partners' President and Chief Executive Officer, stated that,
>
> "While SGLP's parent is experiencing liquidity challenges, SGLP's assets provide important terminalling and storage services to the energy industry. We own valuable assets in strategic locations and remain positioned to provide midstream services. Until our parent advises us of their course of action, we cannot fully evaluate and are not yet prepared to comment on how any such action taken by our parent might affect SGLP."
>
> SGLP derives a substantial majority of its revenues pursuant to a Throughput Agreement and a Terminalling and Storage Agreement with SemGroup, L.P. and its subsidiaries. In addition, SGLP has entered into an Amended and Restated Omnibus Agreement and other agreements with SemGroup, L.P. that address,

among other things, the provision of general and administrative and operating services to SGLP.

10.     SGLP units declined materially on July 18, 2008 dropping from $11.00 to $8.30 on materially increased volume of 9.8 million units.  Thus in two days, SGLP units had dropped over 63% in value, wiping out over $300 million of in the public unitholders' equity.

11.     Various analysts discussed the fallout from this announcement as reported by MarketWatch on July 18, 2008 in an article entitled "Analysts cite possible problems at SemGroup LP tied to high oil prices:

> NEW YORK (MarketWatch) -- SemGroup Energy Partners L.P. said its corporate parent is considering filing for bankruptcy, casting doubts over one of its key revenue sources just one year after the oil-pipeline owner went public along with a crop of other energy partnerships.

> SGLP fell 25% to close at $8.30 as one of the biggest decliners Friday on the Nasdaq, following a 50% drop in the previous session on downgrades by debt rating agencies.

> Analysts raised the possibility that SemGroup LP -- the privately held parent of the public Energy Partners unit - may be falling victim to higher oil prices.

> "While SemGroup has been running an operationally sound business with attractive regional business niches and adequate hedged margins, in Moody's view the over 50% rise in sector oil prices since March 31 is likely to have pressured its liquidity position," Moody's analyst Andrew Oram said in a note on Thursday. "Highly volatile hydrocarbon prices would have been challenging to its hedged trading business."

> Dan Pickering of Tudor Pickering Holt told Dow Jones Newswires that SemGroup LP wrongly bet on crude price to go down earlier this year.

> *"As crude went up, they were forced to cover, and so added additional buying power to the market," he said. "In other words, the higher crude went, the more money they lost."*

> Moody's Andrew Oram said he anticipates much higher funding needs for hydrocarbon inventories and accounts receivables and the posting of much higher cash margin deposits given that the rapid pace of price increase would yield market prices that exceed the prices of existing exchange traded hedges.

SemGroup L.P. owns a 40% limited partner interest and a 2% general partner interest in SemGroup Energy Partners.

Fitch Ratings cut its view on about $2.6 billion in debt held by SemGroup LP, SemCrude LP and SemCAMS Midstream Co. The downgrade came amid an 11% slide in crude prices this week, before futures regained their footing Friday.

The Tulsa, Okla. owner of petroleum storage and transportation assets said late Thursday SemGroup L.P. is exploring various alternatives to bankruptcy protection, including raising additional equity, seeking debt capital or filing a voluntary petition for reorganization.

On Friday, Terry Ronan was named SemGroup, L.P. president and chief executive officer.

Kevin Foxx remains president and chief executive officer of SemGroup Energy Partners, L.P.

12.     The Fitch Ratings Agency issued a downgrade of SemGroup LP and several of its

related entities and placed the company on Rating Watch stating:

Approximately $2.6 billion of debt is affected by these actions. The downgrades and Watch Negative status reflect liquidity pressures related to the sustained elevated level of crude oil prices and SemGroup's ability to continue its marketing and storage businesses in the current price environment.

Spot prices for WTI crude at Cushing, OK have increased by as much as 43% since April 1, 2008. SemGroup hedges a large percentage of its inventories and would be required to post additional margin to increase the collateral support for its hedging program. Specifically, Fitch is concerned that the company may not have sufficient available capacity from its bank facilities to meet requests for additional margin.

SemGroup is a privately held midstream energy partnership focused primarily on providing gathering, transportation, processing, and marketing services for crude oil and refined products in the U.S. Midcontinent region and Canada. Additionally, through its SemMaterials subsidiary, SemGroup stores, transport and markets asphalt and asphalt products in the United States and Mexico. The company is currently owned by management and various private equity investors, including Ritchie Capital Management and Carlyle/Riverstone Global Energy and Power Fund II."

## JURISDICTION AND VENUE

13.    The claims asserted herein arise under §§10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. §240.10b-5. Jurisdiction exists pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §1331.

14.    Venue is proper in this District because many of the wrongful acts alleged herein took place or originated in this District.

15.    Defendants used the instrumentalities of interstate commerce, the U.S. mails and the facilities of the national securities markets in connection with the wrongful activity alleged herein.

## PARTIES

16.    Plaintiff purchased SGLP common units during the Class Period as set forth in the accompanying certification which is incorporated herein by reference, and was damaged thereby.

17.    Defendant SGLP is a Delaware limited partnership. SGLP common units trade on the NASDAQ under the symbol "SGLP."

18.    Defendant Kevin L. Foxx ("Foxx") co-founded the Parent in April 2000 and is the Parent's executive vice president and chief operating officer. He also serves as executive vice president and chief operating officer of SemCrude, L.P. and SemCanada Crude Company. Additionally, Foxx is the president, chief executive officer and a director of SGLP. He signed the Registration Statement in connection with the February 20, 2008 unit Offering. Prior to SemGroup, Foxx was president and operating manager of Foxx Transports, L.L.C., a domestic oil gathering and trading company based in Houston, Texas. He sold the business to SemCrude in April 2000 and was instrumental in the transition and consolidation of his company's assets to SemCrude.

19.    Defendant Gregory C. Wallace ("Wallace"), co-founded the Parent in April 2000 and serves as the Parent's vice president, chief financial officer and secretary. He is a director of SGLP. Wallace signed the Registration Statement with respect to the February Offering.

20.    Defendant Alex Stallings ("Stallings") was, at all relevant times, the Chief Accounting Officer for SGLP. Defendant Stallings serves as the Parent's 's chief accounting officer and directs the financial and accounting operations of the Parent. company. Stallings signed the Registration Statement with respect to the February Offering.

21.    Defendant SemGroup Energy Partners G.P. LLC  (the "General Partner") is the general partner of SGLP. It is wholly owned by the Parent, and has the power to and directs the operations of the Company.   Until the end of the Class Period, it was dominated by non-independent directors.

22.    Defendants Foxx, Wallace and Stallings are sometimes referred to as the Individual Defendants.

## CLASS ACTION ALLEGATIONS

23.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of a Class consisting of all persons who purchased or otherwise acquired the common stock of SGLP from February 20, 2008 through July 17, 2008. Excluded from the Class are defendants, the officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors, and assigns, and any entity in which defendants have or had a controlling interest.

24.    The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of the members of the Class is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, there are approximately 21

million common units of SGLP common stock outstanding, and a substantial number of units were traded during the Class Period. Plaintiff believes that there are hundreds, if not thousands, of members of the Class. Members of the Class may be identified from records maintained by SGLP, its transfer agent or underwriter records and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

25.    Plaintiff's claims are typical of the claims of the other members of the Class in that the members of the Class have been damaged by the acts of defendants.

26.    Plaintiff will fairly and adequately protect the interests of the other members of the Class. To assist him in that endeavor, plaintiff has retained counsel competent and experienced in class and securities litigation. Plaintiff is not aware of any interest it holds which is antagonistic to the interests of the Class.

27.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to this Class are:

a.    Whether the Exchange Act was violated by the defendants' acts, as alleged herein;

b.    Whether any materially false or misleading statements were made and/or whether defendants omitted material facts necessary to make statements made, in light of the circumstances under which they were made, not misleading;

c.    Whether defendants had a duty to correct prior misstatements or omissions and

d.    The measure of damages.

28.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to pursue individual redress for the damages caused to them by defendants' acts. Plaintiff is not aware of any difficulty that will be presented in managing this action as a class action.

## ADDITIONAL SCIENTER ALLEGATIONS

29.    The Individual Defendants and SGLP acted with scienter in that the Individual Defendants and SGLP knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding SGLP, their control over, and/or receipt and/or modification of SGLP's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning SGLP, participated in the fraudulent scheme alleged herein.

30.    The motive of the Individual Defendants and SGLP was to raise substantial capital in the February Offering to provide cash to the Parent to ease its undisclosed material liquidity problems cause by its risky hedging strategy.  In furtherance of this scheme, the Defendants caused SGLP to disseminate the February Prospectus so as to raise  approximately $137 million from the investing public, plus borrowed funds,  which would be paid to the Parent.

12

## LOSS CAUSATION

31.    During the Class Period, as detailed herein, the Individual Defendants and SGLP engaged in a scheme to deceive the market and a course of conduct which artificially inflated the prices of SGLP common stock and operated as a fraud or deceit on Class Period purchasers of SGLP common units by failing to disclose the material adverse facts detailed herein, and further by failing to correct and update information which was previously falsely rendered.  When the Defendants' prior misrepresentations and fraudulent conduct were disclosed (first by wide-spread leakage of the materially adverse news)  and then by press release, the price of SGLP common units fell precipitously as the prior artificial inflation was dissipated.  As a result of their purchases of SGLP common units during the Class Period, Plaintiff and the other Class members suffered economic loss, i.e., damages, under the federal securities laws.

32.    By failing to disclose the material facts detailed herein, the Individual Defendants and SGLP  presented a misleading picture of SGLP business and future prospects.   The Individual Defendants' and SGLP's false and misleading statements had the intended effect and caused SGLP common units to trade at artificially inflated levels throughout the Class Period.

33.    As a direct result of the market leakage and disclosures on or about July 17, 2008, the price of SGLP common units fell precipitously, falling from $22.80 per unit share to $8.30 per unit.

34.    The precipitous decline in the price of SGLP common stock after this disclosure was a direct result of the nature and extent of the Individual Defendants' and SGLP's fraud finally being revealed to investors and the market.  The timing and magnitude of the price decline in SGLP common units stock negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry

factors or Company-specific facts unrelated to the Individual Defendants' and SGLP's fraudulent conduct. The economic loss, i.e., damages, suffered by Plaintiff and the other Class members was a direct result of the Individual Defendants' and SGLP's fraudulent scheme to artificially inflate the prices of SGLP common stock and the subsequent significant decline in the value of SGLP common stock when the Individual Defendants' and SGLP's prior misrepresentations and other fraudulent conduct were revealed.

### Applicability of Presumption of Reliance: Fraud on the Market Doctrine

35.    As to the claims asserted on behalf of the Class, at all relevant times, the market for SGLP common stock was an efficient market for the following reasons, among others:

a.    SGLP common units met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

b.    as a regulated issuer, SGLP filed periodic public reports with the SEC and the NASD;

c.    SGLP regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

d.    SGLP was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

14

36.    As a result of the foregoing, the market for SGLP common units promptly digested current information regarding SGLP from all publicly available sources and reflected such information in the prices of the stock. Under these circumstances, all purchasers of SGLP common units during the Class Period suffered similar injury through their purchase of SGLP common units at artificially inflated prices and a presumption of reliance applies.

### No Safe Harbor

37.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of SGLP who knew that those statements were false when made.

### COUNT 1
**(For Violations of §10(b) of the Exchange Act and Rule 10b-5**
**Against the Individual Defendants and SGLP)**

38.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

39.    During the Class Period, the Individual Defendants and SGLP disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

40.    Thereafter, the Individual Defendants and SGLP failed to update or correct their prior false and misleading statements or omissions thereby continuing to violate the law.

41.    The Individual Defendants and SGLP violated §10(b) of the Exchange Act and Rule 10b-5 in that they:

      a.    Employed devices, schemes, and artifices to defraud;

      b.    Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

      c.    Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of SGLP common units during the Class Period.

42.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for SGLP common stock. Plaintiff and the Class would not have purchased SGLP common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements. As a direct and proximate result of The Individual Defendants' and SGLP's wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of SGLP common stock during the Class Period.

## COUNT II
### (For Violation of §20(a) of the Exchange Act
### Against The General Partner)

43.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44.     The General Partner acted as a controlling person of SGLP within the meaning of §20(a) of the Exchange Act. By reason of its position as the General Partner of SGLP, it had the power and authority to cause SGLP to engage in the wrongful conduct complained of herein. By reason of such conduct, the General Partner are liable pursuant to §20(a) of the Exchange Act.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury.

**WHEREFORE**, plaintiff prays for relief and judgment, as follows:

a.     Determining that this action is a proper class action, certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure, and certifying plaintiff's counsel as class counsel;

b.     Awarding compensatory damages in favor of plaintiff and the other members of the Class against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, including prejudgment and post-judgment interest thereon;

c.     Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d.     Such other and further relief as the Court may deem just and proper.

DATED:  July 21, 2008

**ROY JACOBS & ASSOCIATES**

By: _____
    Roy L. Jacobs (RLJ-0286)

60 East 42nd Street, 46th Floor
New York, NY 10165
Tel. (212) 867-1156
Fax (212) 504-8343
rjacobs@jacobsclasslaw.com

and

**PASKOWITZ & ASSOCIATES**
Laurence D. Paskowitz  (LP-7324)
60 East 42nd Street, 46th Floor
New York, NY 10165
Tel. (212) 685-0969
Fax (212) 685-2306
lpaskowitz@pasklaw.com

ATTORNEYS FOR PLAINTIFF

OF COUNSEL:

FEDERMAN & SHERWOOD
William B. Federman
10205 North Pennsylvania Avenue
Oklahoma City, Oklahoma 73120
Ph: 405.235.1560
Fax: 405.239.2112

## PLAINTIFF'S CERTIFICATE

The undersigned ("Plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1.       Plaintiff has reviewed the complaint of SemGroup Energy Partners, L.P. ("SGLP") and certain other defendants.

2.       Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.       Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.       Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as approved by the court.

5.       Plaintiff made the following transactions during the Class Period (February 20, 2008 through July 17, 2008) in the common units of SGLP:

| Purchases | | |
| --- | --- | --- |
| Date(s) | Number of Shares | Price |
| 05/22/2008 | 500 | 26.90 |
| | | |
| | | |
| | | |
| | | |
| | | |

| Sales | | |
| --- | --- | --- |
| Date(s) | Number of Shares | Price |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

6.       During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws.

7.       I declare under penalty of perjury, this 21st day of July 2008 that the information above is accurate.

Orto bv
Erik A.M. Poelmann
E-signed

### PLAINTIFF'S CERTIFICATE

The undersigned ("Plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1.    Plaintiff has reviewed the complaint of SemGroup Energy Partners, L.P. ("SGLP") and certain other defendants.

2.    Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as approved by the court.

5.    Plaintiff made the following transactions during the Class Period (February 20, 2008 through July 17, 2008) in the common units of SGLP:

| Purchases | | | | Sales | | |
|-----------|---|---|---|-------|---|---|
| Date(s) | Number of Shares | Price | | Date(s) | Number of Shares | Price |
| 06/26/2008 | 100 | 25.50 | | | | |
| 07/07/2008 | 50 | 24.49 | | | | |
| 07/16/2008 | 50 | 23.00 | | | | |
| 07/17/2008 | 50 | 21.84 | | | | |
| 07/17/2008 | 50 | 21.00 | | | | |
| 07/17/2008 | 50 | 14.275 | | | | |
| 07/17/2008 | 153 | 14.50 | | | | |

6.    During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws.

7.    I declare under penalty of perjury, this 21st day of July 2008 that the information above is accurate.

Erik A.M. Poelmann
E-signed

### PLAINTIFF'S CERTIFICATE

The undersigned ("Plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1.      Plaintiff has reviewed the complaint of SemGroup Energy Partners, L.P. ("SGLP") and certain other defendants.

2.      Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.      Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as approved by the court.

5.      Plaintiff made the following transactions during the Class Period (February 20, 2008 through July 17, 2008) in the common units of SGLP:

| Purchases | | | | Sales | | |
|---|---|---|---|---|---|---|
| Date(s) | Number of Shares | Price | | Date(s) | Number of Shares | Price |
| 06/04/2008 | 600 | 26.20 | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

6.      During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws.

7.      I declare under penalty of perjury, this 21st day of July 2008 that the information above is accurate.

E&R Management bv
Eric A.M. Poelmann
E-signed